**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5499-17T2

HARRIET PONTEJOS AMANTE,

    Plaintiff-Appellant,

v.

JENNIFER PONTEJOS SCHROCK
and ROBERT SCHROCK,

    Defendants-Respondents.

_____

Submitted September 24, 2019 – Decided October 1, 2019

Before Judges Fisher and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-000138-17.

Peter W. Latimer, attorney for appellant

Callagy Law, attorneys for respondents (Christopher R. Miller, on the brief).

PER CURIAM

Although this appeal concerns the enforceability of a settlement agreement, we find it necessary to briefly describe the nature of the settled claims.

Plaintiff Harriet Pontejos and defendant Jennifer Pontejos Schrock are sisters.[1] In 2000, Harriet was desirous of owning a home and for reasons not entirely clear – or presently relevant – she and Jennifer entered into an unusual agreement. Harriet provided the funds for the purchase of a home in Bergenfield in which Harriet would reside,[2] but Jennifer was designated as the purchaser and only Jennifer's name was placed on the deed. Harriet agreed to make all future mortgage payments and pay all carrying costs, while Jennifer agreed to hold legal title. The sisters also agreed that upon the property's sale they would equally share the net proceeds.

For more than a decade, Harriet made all mortgage, tax and insurance payments on the property, but the mortgage was also refinanced on a number of occasions. The refinancings were apparently necessitated by Harriet's fruitless

---

[1] We base this brief discussion about the allegations in the underlying suit only on the parties' pleadings, which were never tested at trial.

[2] In 1997, Harriet was struck by a car and sustained severe injuries. She settled her claim in 2000 for approximately $240,000.

attempts to keep her convenience store afloat.[3] Each refinancing raised the extent to which the home was encumbered (likely decreasing the sisters' equity in the property) and also raised the monthly payments. In 2012, the sisters' parents moved in and began sharing expenses with Harriet.

Late in 2016, the house of cards began to topple and the bank holding the note pursued a foreclosure of the mortgage. When Jennifer advised Harriet there was no recourse but to sell, Harriet resisted and refused to cooperate, leading to: their parents' departure from the premises; Jennifer's entry into a short sale; and Jennifer's later commencement of an eviction action against Harriet in the tenancy court. In turn, Harriet commenced this chancery action, alleging Jennifer had been unjustly enriched, and Jennifer and her husband responded with a counterclaim that alleged tortious interference with a prospective economic advantage.[4]

The parties engaged in and completed discovery and, in May 2018, appeared for trial. Before the trial commenced, the parties and their attorneys reached a settlement. Their agreement called for Jennifer to pay $5000, which

---

[3] The parties disputed the purposes of the refinancings and the use to which the funds were put. We repeat that these allegations were never tested, and we offer no view of the facts; our intent is only to describe the nature of the suit.

[4] Jennifer's tenancy action was transferred to the Chancery Division.

A-5499-17T2

consisted of a cash payment to Harriet of $4008, and Jennifer's payment to a finance company – to pay off a motor vehicle loan – in the amount of $992; the parties also agreed that the motor vehicle, to which her father held title but which was used exclusively by Harriet, would thereafter be titled in Harriet's name.

Once finalized, the parties appeared in court to place the settlement on the record. The judge swore in the parties, and their attorneys questioned them about the voluntariness of the settlement agreement. Although Harriet expressed uneasiness, she ultimately assented. Later, after the matter's dismissal, Harriet moved to set aside the settlement agreement, alleging fraud, coercion, and duress. In arguing fraud, Harriet alluded to the settlement agreement's inclusion of terms concerning the motor vehicle that were not at issue in the suit. And she claimed coercion and duress because she felt intimidated by Jennifer's attempts to incorporate the vehicle as part of the settlement negotiations. The trial judge denied Harriet's motion, as well as Jennifer's cross-motion for fees and sanctions, for reasons expressed in a written opinion.

Harriet appeals, arguing there was sufficient evidence to show the settlement agreement was either procured by fraud, coercion or duress. We

4

disagree, finding no merit in these arguments worthy of discussion in a written opinion.  R. 2:11-3(e)(1)(E).

It is true that in open court Harriet expressed displeasure with the settlement agreement.  She was asked by her attorney if she "agreed to settle this case for $5,000 and [a] transfer of title to [her] car," and Harriet responded:  "Do I have any choice?"  The attorney inexplicably answered "no," but the judge immediately interrupted and said:

> Let me clear this record up.  So you do have a choice, okay?  You can try the case today.  You may win, you may lose.  I'm sure your attorney told you about the possibilities of winning . . . .  And as I indicated to you, it might take a few days to try the case and you'd be here all day today, part of the day tomorrow and maybe even part of a third day.  And then who knows what the results would be.  Like I indicated, you may win, you may lose and someone – even if you win, the defendants might file an appeal and you might come back and try it all over again.  So you're weighing that against settling the case today.  Okay?  You understand that, right?  You're nodding yes . . . .

Because Harriet only nodded, the judge asked her to verbally respond, and Harriet – in answering whether she understood – said:  "Yes, I do."  So, while there is no doubt Harriet was unhappy with the agreement, there is also no doubt she voluntarily entered into it.  The judge correctly rejected her later attempt to undo the settlement.

A-5499-17T2

In short, we affirm the order denying Harriet's motion to vacate the settlement agreement substantially for the reasons expressed in the thorough and well-reasoned written opinion of Judge Menelaos W. Toskos.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5499-17T2